MOLO LAMKEN LLP
JEFFREY A. LAMKEN (CA Bar # 154217)
The Watergate, Suite 660
600 New Hampshire Ave.
Washington, D.C. 20037
Telephone: (202) 556-2000
Facsimile: (202) 556-2001

*Counsel for Third-Party Defendant*
BANK MELLI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MICHAEL BENNETT, *et al.*,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, *et al.*,

Defendants.

VISA INC. and FRANKLIN RESOURCES, INC.,

Third-Party Plaintiffs,

v.

BANK MELLI, *et al.*,

Third-Party Defendants.

Case No. CV 11-5807 (CRB) (NJV)

**MOTION TO DISMISS—SUPPLEMENTAL BRIEF**

**Before the Honorable Charles R. Breyer and Nandor J. Vadas**

**Noticed Hearing:**
**December 13, 2012, 2:00 p.m.**

# TABLE OF CONTENTS

Page

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. The TRIA and Section 1610(g) Do Not Apply Retroactively to This Case ..... 2

II. The Complaint Fails To Allege That the Funds at Issue are "Assets of" or "Property of" Bank Melli ..... 5

III. This Action Should Be Dismissed Pursuant to Rule 19 ..... 6

CONCLUSION ..... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389 (S.D.N.Y. 2011) .... 5

*Delay v. Gordon*, 475 F.3d 1039 (9th Cir. 2007) .... 4

*Estate of Cervin v. Comm'r of Internal Revenue*, 111 F.3d 1252 (5th Cir. 1997) .... 6

*Estate of Heiser v. Islamic Republic of Iran*, — F. Supp. 2d — , 2012 WL 3776705 (D.D.C. Aug. 31, 2012) .... 5

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) .... 4

*In re Bialac*, 712 F.2d 426 (9th Cir. 1983) .... 4

*Johnson v. United States*, 529 U.S. 694 (2000) .... 2

*Peacock v. Thomas*, 516 U.S. 349 (1996) .... 4

*Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008) .... 1, 6, 7

*Rubin v. Islamic Republic of Iran*, 637 F.3d 783 (7th Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012) .... 7

*SEC v. Aragon Capital Advisors, LLC*, No. 07-919, 2011 WL 3278907 (S.D.N.Y. July 26, 2011) .... 6

*Texas & Pac. Ry. Co. v. Anderson*, 149 U.S. 237 (1893) .... 4

*Tyson v. Holder*, 670 F.3d 1015 (9th Cir. 2012) .... 3

*United States v. Rodrigues*, 159 F.3d 439 (9th Cir. 1998), *amended*, 170 F.3d 881 (9th Cir. 1999) .... 6

*Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332 (9th Cir. 1997) .... 4

*Vartelas v. Holder*, 132 S. Ct. 1479 (2012) .... 2

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) .................. 6

**STATUTES AND RULES**

28 U.S.C. § 1604 .................................................................................. 7, 8

28 U.S.C. § 1605A(c)(4) ........................................................................... 3

28 U.S.C. § 1609 .................................................................................. 7, 8

28 U.S.C. § 1610(g) .............................................................................. *passim*

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 .............................................................................. *passim*

Fed. R. Civ. P. 19 .............................................................................. 1, 6, 7, 8

Bank Melli respectfully submits this brief in response to the Court's invitation at the November 16, 2012 hearing to submit supplemental briefs addressing Bank Melli's motion to dismiss. *See* Nov. 16, 2012 Rough Tr. at 31 (Exhibit A).

**INTRODUCTION**

Even if one sets aside the fact that neither the TRIA nor Section 1610(g) abrogates *Bancec* with the clarity necessary to overcome established international law and Supreme Court precedent, *see* Mot. to Dismiss (Doc. No. 112) at 6-14, Bank Melli's motion still must be granted. First, as explained at the hearing, allowing Plaintiffs to seize Bank Melli's assets to satisfy a judgment against Iran, based on conduct that predated the statutes' enactment, would give the statutes impermissibly retroactive effect. Nothing in either statute indicates Congress intended to legislate retroactively, and Plaintiffs have not urged otherwise. Second, the assets at issue are not subject to either the TRIA or Section 1610(g) because there is no allegation that Bank Melli ***owns*** them. The District Court for the District of Columbia recently confirmed that those provisions by their terms apply only when the sovereign entity ***owns*** the property in question.

Finally, this action should be dismissed pursuant to Federal Rule of Civil Procedure 19 because this Court does not have jurisdiction over Bank Melli and Bank Melli is a required party without which the suit cannot proceed. Under *Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008), "[a] case may not proceed when a required-entity sovereign is not amenable to suit." *Id.* at 867. Although Plaintiffs suggested that Bank Melli's immunity from suit is irrelevant because this case is a post-judgment enforcement action, *Pimentel* is directly to the contrary: That case likewise involved a post-judgment enforcement action, yet the Supreme Court held that the case could not go forward because of the sovereign's jurisdictional immunity from suit. Plaintiffs ignore that the FSIA provides two ***distinct*** immunities—a jurisdictional immunity ***from suit for the sovereign entity*** and an immunity ***from attachment for assets***. Plaintiffs point to nothing that over-

comes Bank Melli's jurisdictional immunity from suit.

## ARGUMENT

### I. The TRIA and Section 1610(g) Do Not Apply Retroactively to This Case

Neither the TRIA nor Section 1610(g) can be applied to this case without giving the statutes impermissibly retroactive effect. Plaintiffs do not dispute that the conduct giving rise to the judgments here occurred before either provision was enacted. Nor do they cite any indication that Congress intended the statutes to apply retroactively. Nonetheless, they insisted at the hearing that applying the statutes here would not be retroactive because Bank Melli's assets were blocked after the TRIA's enactment. Ex. A at 13-14. That argument is incorrect.

**A.** Whether a statute operates retroactively depends on when the relevant "primary conduct" took place. *See* Mot. 15-17; Reply 11. The "primary conduct" here is the events that gave rise to the underlying judgments. That Bank Melli is now being confronted with liability for those judgments based on unrelated subsequent conduct is beside the point. The Supreme Court has made clear that later secondary conduct—even if wrongful—does not eliminate a statute's retroactive effect. In *Johnson v. United States*, 529 U.S. 694 (2000), Congress had enacted a statute authorizing a court to impose an additional term of supervised release if a defendant violated conditions of his initial release. The defendant had been convicted before Congress enacted that statute, but he violated the conditions of his release after enactment. *Id.* at 697-98. The court of appeals held that the statute was not being applied retroactively because it only punished "'new offenses,'" *i.e.*, the post-enactment violation of release conditions. The Supreme Court disagreed: "Since postrevocation penalties ***relate to the original offense***, to sentence [the defendant] to a further term of supervised release under [the new statute] would be to apply this section retroactively . . . ." *Id.* at 701 (emphasis added); *see also Vartelas v. Holder*, 132 S. Ct. 1479, 1488-89 (2012) ("Vartelas' return to the United

States occasioned his treatment as a new entrant, but the reason for the 'new disability' imposed on him was not his lawful foreign travel. It was, indeed, his conviction, pre-IIRIRA, of an offense qualifying as one of moral turpitude. That past misconduct, in other words, not present travel, is the wrongful activity Congress targeted . . . ."); *Tyson v. Holder*, 670 F.3d 1015, 1022 (9th Cir. 2012).

The statutes themselves make clear that the "primary conduct" here is the conduct that led to the underlying judgments. The amount Bank Melli would have to pay is determined in the first instance by the ***damage*** allegedly caused by the underlying misconduct, not by the nature of some subsequent event. *See* TRIA § 201(a) (blocked assets available to satisfy judgments "to the extent of any compensatory damages for which such terrorist party has been adjudged liable"); 28 U.S.C. § 1610(g). The ***punitive damages*** component of the award for which Bank Melli would be liable is likewise determined by the reprehensibility of the misconduct underlying the judgment, not by the reprehensibility of something that occurred thereafter. *See* 28 U.S.C. § 1605A(c)(4). At the hearing, Plaintiffs insisted that application of the statutes would not be retroactive because "there's no question of punitive damages here" and thus "it's not a question of how bad was Bank Melli." Ex. A at 24. But punitive damages in fact ***are*** at issue. *See* Doc. No. 114 at 17-18 n.11. More fundamentally, no court has ever held that non-retroactivity principles apply only to punitive awards. Whether the award is punitive or compensatory, the fact remains that Plaintiffs are seeking to make Bank Melli pay a judgment based on conduct for which Bank Melli could not have been held responsible at the time.

**B.** At the hearing, this Court questioned whether those principles applied because one could characterize the TRIA and Section 1610(g) as addressing the "collectability" of judgments rather than "liability." *See* Ex. A at 16 ("[T]he liability's always there. It's a change in collectability."); *id.* at 19. But that distinction evaporates on close inspection. Determining the person against whom a judgment

may be enforced is a question of both collectability ***and*** liability; there is no real difference. Courts routinely speak of parties "liable to pay a judgment." *See, e.g.*, *Delay v. Gordon*, 475 F.3d 1039, 1042 (9th Cir. 2007) (a "judgment . . . for which the United States was ***liable***"); *In re Bialac*, 712 F.2d 426, 427 (9th Cir. 1983) (debtor "***liable*** on HIC's judgment"); *Peacock v. Thomas*, 516 U.S. 349, 351 (1996) ("***liability*** for a money judgment"); *Valley Nat'l Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332, 1338 (9th Cir. 1997) ("individual partners would be ***liable for such a judgment***"); *Texas & Pac. Ry. Co. v. Anderson*, 149 U.S. 237, 241 (1893) ("bar to any ***liability on the judgment***") (all emphasis added). Applying the TRIA and Section 1610(g) here would make Bank Melli ***liable*** to pay a judgment for which it was not previously liable at the time of the underlying conduct. Saying the judgment is "collectible" from Bank Melli is just another way of saying Bank Melli is "liable" for its payment.

This Court also questioned whether the TRIA and Section 1610(g) were analogous to changes in bankruptcy exemptions such as the homestead exemption. Ex. A at 25. Merely altering property exemptions, however, does not result in any change to ***who is liable to pay*** a judgment. It at most affects the scope of a single person's property that is subject to an exemption. By contrast, Plaintiffs urge that the TRIA and Section 1610(g) make one entity liable to pay a ***different*** entity's debts. The concept of juridical separateness cannot be likened to an exemption from seizure, execution, or even liability. It is instead a bedrock principle that ***defines*** a separate corporate entity as a distinct person—separate and distinct from related corporations, shareholders, and owners—that has long pervaded domestic, international, and even constitutional law. *See First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-34 (1983); *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 784 (1978) (corporations themselves have rights protected by the First Amendment); *id.* at 778 n.14 (citing cases demonstrating that corporations have rights protected by the Fourth and Fourteenth Amendments).

Making one juridical entity liable for the debt of another is in no way comparable to merely altering a single person's property exemptions.

## II. The Complaint Fails To Allege That the Funds at Issue are "Assets of" or "Property of" Bank Melli

Neither the TRIA nor Section 1610(g) applies here because those statutes require the property at issue to be "assets of" or "property of" Bank Melli. *See* Mot. 18-20. Both statutes thus require that the property be "owned by" Bank Melli. *Id.* The complaint, however, alleges only that the assets at issue are "due and owing by contract to Bank Melli pursuant to a commercial relationship." Doc. No. 16 ¶ 16. It thus does not allege the ownership the statutes require.

In its original brief, Bank Melli noted that the court in *Calderon-Cardona v. JPMorgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 399-407 (S.D.N.Y. 2011), had rejected a similar effort to reach assets under the TRIA and Section 1610(g) for precisely that reason. Mot. 18-19. After Bank Melli filed its motion, Chief Judge Lamberth issued an opinion agreeing with that decision. In *Estate of Heiser v. Islamic Republic of Iran*, — F. Supp. 2d — , 2012 WL 3776705 (D.D.C. Aug. 31, 2012), the court addressed "what, if any, ownership interest is required to execute under" the TRIA and Section 1610(g). *Id.* at *7. Expressly following the decisions relied on by Bank Melli, the court "interpret[ed] the word 'of' in TRIA § 201(a) to mean 'belonging to.'" *Id.*; *see also id.* at *12 ("[T]he textual issue under § 1610(g) is the same: does the word 'of' require plaintiff to prove that [the defendant] had an ownership interest in the Contested Accounts? For the same textual reasons previously discussed in reference to TRIA § 201(a), the answer remains yes."). It thus concluded that "the plain meaning of 'of' requires ownership." *Id.* at *10.

Like the court in *Calderon-Cardona*, the *Heiser* court concluded that blocked Electronic Fund Transfers held by a bank were not owned by a sovereign and thus not attachable. 2012 WL 3776705, at *18. Citing legislative history to

Section 1610(g), the court noted that "ownership" means "beneficial ownership." *Id.* at *12 (quoting H.R. Rep. No. 110-477, at 1001 (2007)). The sovereign's mere ***right to receive*** transferred funds was not sufficient to make it the ***owner*** of those funds, beneficial or otherwise. *See id.* at *15-19.

Likewise here, the allegation that funds are "due and owing by contract to Bank Melli pursuant to a commercial relationship" does not make Bank Melli the ***owner*** of those funds. In *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003), for example, the Ninth Circuit rejected the claim that a mere "contractual grant of royalties" made a party a "beneficial owner." *Id.* at 1143-45. "An entitlement or right to receive is an interest distinct from ownership." *United States v. Rodrigues*, 159 F.3d 439, 448 (9th Cir. 1998), *amended*, 170 F.3d 881 (9th Cir. 1999); *see also*, *e.g.*, *Estate of Cervin v. Comm'r of Internal Revenue*, 111 F.3d 1252, 1256 (5th Cir. 1997) ("[I]ncidents of ownership . . . must be distinguished from . . . rights to receive the proceeds . . . ."); *SEC v. Aragon Capital Advisors, LLC*, No. 07-919, 2011 WL 3278907, at *19 (S.D.N.Y. July 26, 2011) ("The right to receive distributions . . . is distinct from having an ownership interest in those assets of the partnership."). Bank Melli may have a contractual right to receive payment from Visa and Franklin, but it is not alleged to be the ***owner*** of those funds. If Visa failed to pay, Bank Melli would sue for breach of contract, not theft.

## III. This Action Should Be Dismissed Pursuant to Rule 19

Finally, this case must be dismissed under Rule 19 because the Court lacks jurisdiction over Bank Melli. In *Republic of the Philippines v. Pimentel*, 553 U.S. 851 (2008), the Supreme Court held that, under Rule 19, "[a] case ***may not proceed when a required-entity sovereign is not amenable to suit***." *Id.* at 867 (emphasis added). The Court explained: "[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, ***dismissal of the action must be ordered***

where there is a potential for injury to the interests of the absent sovereign." *Id.* (emphasis added). *Pimentel* compels dismissal here because Bank Melli is a required party that cannot be joined due to its sovereign immunity.

At the hearing, Plaintiffs tried to avoid *Pimentel* on the ground that this is a collection action. They argued: "We're seeking to execute against . . . property. We're not seeking to adjudicate the liability of Bank Melli for any underlying claim. ***So the only sovereign immunity that's relevant here is the sovereign immunity that may attach to that property***." Ex. A at 9. That view cannot be reconciled with *Pimentel*. Like this case, *Pimentel* involved a post-judgment enforcement action where the plaintiffs sought to collect their judgment from a pool of assets held by a third party (there, Merrill Lynch). *See* 553 U.S. at 858 (noting the $2 billion judgment already obtained by the plaintiff class). "Facing claims from various . . . creditors, Merrill Lynch filed [an] interpleader action . . . ." *Id.* at 859; *see also id.* at 854-55 ("This interpleader action was commenced to determine the ownership of property allegedly stolen by Ferdinand Marcos when he was the President of the Republic of the Philippines."). But, just as Bank Melli does here, the sovereign in that case invoked ***its immunity from jurisdiction*** under the FSIA. *Id.* at 865 (citing 28 U.S.C. § 1604). No party identified any provision of the FSIA that overcame the sovereign's immunity to suit, so the Supreme Court held that the case must be dismissed: Dismissal "must be ordered," it held, where "a required-entity ***sovereign*** is not ***amenable to suit***." *Id.* at 867 (emphasis added).

Plaintiffs have responded by debating whether the assets at issue here are immune from execution and attachment. But they ignore the fact that the FSIA recognizes two different types of immunity—immunity ***of property from attachment***, 28 U.S.C. § 1609, and the immunity ***of sovereigns from suit***, *id.* § 1604; *see also Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 793 (7th Cir. 2011), *cert. denied*, 133 S. Ct. 23 (2012) ("The Act contains two primary forms of immunity. Section 1604 provides jurisdictional immunity from suit . . . . Section 1609 . . .

codifies the related common-law principle that a foreign state's property in the United States is immune from attachment and execution."). Whether or not there is an exception to attachment immunity for the property at issue, Bank Melli has asserted that it is immune from suit under Section 1604 and that, as a result, this Court lacks subject matter jurisdiction over it. *See* Mot. 22; Reply 14-15. Plaintiffs have not identified a single exception to jurisdictional immunity that would abrogate Bank Melli's immunity to suit. Under *Pimentel* and ordinary Rule 19 principles, Plaintiffs cannot insist on litigating the disposition of property in which a sovereign is alleged to have some interest where the sovereign's asserted immunity precludes it from being made a party to the suit.

Simply put, whether the sovereign can be joined as a party depends on the sovereign's immunity from suit under Section 1604, not the property's immunity from attachment under Section 1609. Because Bank Melli is a required party under Rule 19 and Plaintiffs have failed to allege any basis to overcome its jurisdictional immunity under Section 1604, the case must be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in Bank Melli's motion to dismiss and reply, Bank Melli's motion to dismiss should be granted.

Dated: December 5, 2012

Respectfully submitted,

MOLO LAMKEN LLP

By: /s/
Jeffrey A. Lamken

*Counsel for Third-Party Defendant*
BANK MELLI