IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BENNETT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>Defendants. | Case No. 11-cv-05807-CRB<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT, GRANTING MOTION FOR STAY** |

In this case, four groups of judgment creditors ("Plaintiffs" or "Judgment Creditors") who hold judgments against Iran seek to recover $17.6 million in assets ("the Blocked Assets") held by Third Party Plaintiffs Visa and Franklin. Although the assets are "due and owing to" Bank Melli, an Iranian instrumentality, they are blocked by executive orders issued by the President and regulations issued by the Department of the Treasury, Office of Foreign Assets Control ("OFAC"). The time has come for summary judgment. As the Court indicated at the motion hearing, it now GRANTS Plaintiffs' Motion for Summary Judgment (dkt. 172), and GRANTS Bank Melli's Motion to Stay (dkt. 180).

**I.     BACKGROUND**

**A.     The Judgment Creditors**

The Judgment Creditors are United States citizens, or representatives of their estates, who hold unsatisfied money judgments against Iran for injuries sustained in multiple terror attacks carried out with Iran's material support and assistance. See Acosta v. Islamic Republic of Iran, 574 F. Supp. 2d 15 (D.D.C. 2008); Estate of Heiser v. Islamic Republic of Iran, 466 F. Supp. 2d 229 (D.D.C. 2006); Greenbaum v. Islamic Republic of

Iran, 451 F. Supp. 2d 90 (D.D.C. 2006); Bennett v. Islamic Republic of Iran, 507 F. Supp. 2d 117 (D.D.C. 2007). Their judgments are based on claims against Iran for which Iran was not immune under section 1605A and/or section 1605(a)(7) of the Foreign Sovereign Immunities Act of 1976 ("FSIA"), Pub. L. No. 94-583, 90 Stat. 2891 (codified as amended at 28 U.S.C. §§ 1602 et seq.); Bennett v. Islamic Republic of Iran, 825 F.3d 949, 955 (9th Cir. 2016) (discussing FSIA exceptions to general rule of immunity).

The Acostas' judgment is for $50,172,000.00; the Bennetts' judgment is for $12,904,548.00; the Greenbaums' judgment is for $19,879,023.00; and the Heisers' judgment is for $286,089,966.00. Mechling Decl. Ex. E. (dkt. 172-6) at 2–4.[1] Their combined judgments total $369,045,537.00. The Judgment Creditors have collected approximately $195,900,000.00 in partial satisfaction of their judgments. See Mechling Decl. (dkt. 172) ¶ 10; Norman Decl. (dkt. 172-10) ¶ 7; Kremen Decl. ¶ 9. Their unpaid compensatory damage judgments therefore far exceed the value of the Blocked Assets.

### B. Bank Melli

Bank Melli, Iran's largest financial institution, is wholly owned by Iran. Bennett, 825 F.3d at 957; Mechling Decl. Ex. D (dkt. 172-5) ¶ 7. On August 10, 1995, OFAC recognized this, issuing a notice that Bank Melli "and all [its] offices worldwide" are "owned or controlled by the Government of Iran." Implementation of Executive Order No. 12,959 With Respect to Iran, 60 Fed. Reg. 40,881, 40,884 (Aug. 10, 1995).

#### 1. EO 13,382

On June 28, 2005, acting pursuant to, inter alia, the authority vested in him by the International Emergency Economic Powers Act ("IEEPA"), Pub. L. No. 95-223, § 202, 91 Stat. 1626 (codified as amended at 50 U.S.C. § 1601 et seq.), President Bush issued Executive Order 13,382. EO 13,382 blocked all property located in the United States owned by any entity "determined by the Secretary of State, in consultation with the

---

[1] The Judgment Creditors have also been awarded punitive damages in the amount of $600,000,000.00 in aggregate. Mechling Decl. (dkt. 172-1) ¶ 8; Kremen Decl. (dkt. 172-7) ¶ 7.

2

Secretary of Treasury, the Attorney General, and other relevant agencies, to have engaged, or attempted to engage, in activities or transactions that have materially contributed to, or pose a risk of materially contributing to, the proliferation of weapons of mass destruction or their means of delivery." Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters, 70 Fed. Reg. 38,567, 38,567, § 1 (June 28, 2005). On October 25, 2007, Bank Melli was designated an entity "whose property and interests in property are blocked pursuant to Executive Order 13382." Additional Designation of Entities Pursuant to Executive Order 13,382, 72 Fed. Reg. 62,520, 62,521 (Nov. 5, 2007).

On January 16, 2016, Bank Melli's Executive Order 13,382 designation was removed. See Changes to Sanctions Lists Administered by the Office of Foreign Assets Control on Implementation Day Under the Joint Comprehensive Plan of Action, 81 Fed. Reg. 13,562, 13,562, 13,564 (Mar. 14, 2016).

### 2. EO 13,599

On February 5, 2012, acting pursuant to the authority vested in him by, inter alia, IEEPA, President Obama issued Executive Order 13,599, which blocked "[a]ll property and interests in property of the Government of Iran, including the Central Bank of Iran, that are in the United States, that hereafter come within the United States, or that are or hereafter come within the possession or control of any United States person." Blocking Property of the Government of Iran and Iranian Financial Institutions, 77 Fed. Reg. 6659, 6659, § 1(a) (Feb. 5, 2012). EO 13,599 defines "Government of Iran" to "mean[] the Government of Iran, any political subdivision, agency, or instrumentality thereof, including the Central Bank of Iran, and any person owned or controlled by, or acting for or on behalf of, the Government of Iran." Id. at 6660, §7(d). OFAC then promulgated the Iranian Transactions and Sanctions Regulations ("ITSRs") pursuant to IEEPA in order to implement the EO. See Iranian Transactions Regulations, 77 Fed. Reg. 64,664 (Oct. 22, 2012); 31 C.F.R. Part 560. The ITSRs similarly both define "Government of Iran" and block its property. See 31 C.F.R. §§ 560.211(a), 560.304(a)–(c).

3

On January 16, 2016, the same day Bank Melli's Executive Order 13,382 designation was removed, OFAC published a "list of persons identified by OFAC as meeting the definition of the term Government of Iran or the term Iranian financial institution as set forth in, respectively, sections 560.304 and 560.321 of the ITSR." Office of Foreign Assets Control, List of Persons Identified as Blocked Solely Pursuant to Executive Order 13,599 at 1 (Aug. 15, 2018), available at https://www.treasury.gov/ofac/downloads/13599/13599list.pdf (hereinafter "13599 List"). OFAC identified Bank Melli on the 13599 List as an entity meeting the definition of Government of Iran. Id. at 5. EO 13,599 is self-executing: "[t]he property and interests in property falling within the definition of the terms Government of Iran and Iranian financial institutions are blocked pursuant to this section regardless of whether the names of such persons are" identified on the EO 13599 List. See 31 C.F.R. § 560.211 Note 1.

### 3. EO 13,244

In addition, on November 5, 2018, the United States announced that it had added Bank Melli to the Specially Designated Nationals and Blocked Persons List ("SDN List"), designating it a Specially Designated Global Terrorist ("SDGT"). See Mechling Reply Decl. Ex. A (dkt. 184-2) at 2–3 & Ex. B (dkt. 184-3) at 3. President Bush issued Executive Order 13244 pursuant to, inter alia, IEEPA; that Order blocks all property of foreign persons designated as an SDGT. See Executive Order 13224, 66 Fed. Reg. 49,079, 49, 079 (Sept. 23, 2001); see also 31 C.F.R. § 594.201, 594.310.

### C. The Blocked Assets

On April 15, 1991, Bank Melli applied to Visa International Service Association ("Visa International") to become a principal member in Visa International's "common bank card and/or travelers cheque program." Bailey Decl. Ex. 1 (dkt. 172-13). As part of the application, Bank Melli entered into a Membership Agreement with Visa International. Id. Visa is a corporation organized under the laws of the State of Delaware with a principal place of business in Foster City, California. Bailey Decl. (dkt. 172-12) ¶ 3. Bank

4

Melli admits that "it is or was a party to an agreement with Visa or a Visa affiliate pursuant to which Bank Melli agreed to accept Visa cards in Iran through its branches in that country, and that certain amounts are due and owing to Bank Melli pursuant to that agreement." Mechling Decl. Ex. D.

In or about April 1995, OFAC "informed Visa that, owing to sanctions imposed against [Iran], Visa could no longer accept transactions acquired by Bank Melli." Bailey Decl. ¶ 8. On July 4, 1995, Visa International informed Bank Melli that, because Bank Melli's accounts at Bank of New York had been frozen, Visa International transferred funds due to Bank Melli "to a separate settlement account." Bailey Decl. Ex. 3 (dkt. 172-15); Bailey Decl. ¶ 8. "Shortly thereafter, all . . . transactions [acquired by Bank Melli] ceased, leaving certain sums owing to Bank Melli's settlement account." Bailey Decl. ¶ 8. On March 15, 1996, "Visa International invested the $2,570,465.26 then due and owing to Bank Melli in securities issued by the Institutional Fiduciary Trust." Id. ¶ 9. Subsequently, "[a]dditional funds due and owing to Bank Melli were invested in securities issued by the Institutional Fiduciary Trust up until January 9, 1998." Id. ¶ 10. Bank Melli wrote to Visa on January 25, 2004, stating, "our funds for acquiring transactions made by VISA cardholders in Iran from 6/6/95 till cease of operations are $11,587,627.02 which are held with [Visa International]." Bailey Decl. Ex. 4 (dkt. 172-16) (emphasis added). Visa International held the funds in an account named Visa International Special Account 5. Bailey Decl. ¶ 11.

On September 29, 2010, Visa International submitted an Annual Report of Blocked Property, as required by OFAC regulations. Bailey Decl. Ex. 6 (dkt. 172-18). In that report, Visa International reported to OFAC that it had blocked Visa International Special Account 5. Id. Visa International reported that the value of the blocked account was $17,648,962.76. Id. The report lists Visa International as the "owner" but states, "Account holds Bank Melli funds." Id. Visa International submitted a second Annual Report on September 27, 2011. See Bailey Decl. Ex. 7 (dkt. 172-19). That report also lists Visa International as the "owner" but includes the same account number as the 2010

5

report, the same "Visa International Special Account 5" name, and the same value of $17,648,962.76. Id.

As of May 9, 2012, "the total amount due and owing (but not paid to) Bank Melli, including interest and return on investment, was $17,648,962.76." Bailey Decl. ¶ 10. On that date, "Visa deposited the outstanding funds due and owing to Bank Melli, plus interest and any return on investment, in the Court's Registry amounting to $17,648,962.76." Bailey Decl. ¶ 12; Mechling Decl. Ex. C; Notice (dkt. 89). Visa and Franklin have disclaimed any interest in the funds. Compl. (dkt. 16) ¶ 4.

### D.   Procedural History

Visa and Franklin brought this interpleader action "to obtain a determination as to which [of the groups of judgment creditors], if any, has priority with respect to [the Blocked Assets] to satisfy their judgments or their claims." Id. In February of 2014, this Court denied Bank Melli's motion to dismiss, but certified the matter for interlocutory appeal. See generally MTD (dkt. 112); Order Denying MTD (dkt. 128). The Ninth Circuit affirmed in a series of orders, the Supreme Court denied certiorari, and now the case is back in this Court. See Bennett v. Islamic Republic of Iran, 799 F.3d 1281 (9th Cir. 2015); Bennett v. Islamic Republic of Iran, 817 F.3d 1131 (9th Cir. 2016); Bennett, 825 F.3d 949; Bank Melli v. Bennett, 138 S. Ct. 1260 (2018).

The Judgment Creditors have moved for summary judgment "directing the turnover to the Judgment Creditors of the [Blocked Assets] deposited with the Court's Registry." See MSJ at 2. Visa and Franklin also moved for discharge and for an award of $324,130.60 in attorneys' fees. See Fees Mot. (dkt. 175). Bank Melli opposed both motions, see Opp'n to Fees Mot. (dkt. 181); Opp'n to MSJ (dkt. 179) and moved to stay enforcement during appeal, see Motion to Stay. Plaintiffs replied and opposed the Stay, see Reply re MSJ (dkts. 185, 186); and Bank Melli filed a reply in support of its Motion to Stay, see Reply re Stay (dkt. 189). The Court granted the discharge and fees motion on the papers, see Order re Discharge and Fees (dkt. 190), though stayed disbursement of the fees

until after hearing the Motion to Stay, see Order re Ex Parte Mot. (dkt. 192). Accordingly, the two pending motions are the Motion for Summary Judgment and the Motion to Stay.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the case under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in the light most favorable to the nonmoving party, "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On an issue on which it will have the burden of proof at trial, the moving party must affirmatively show that no reasonable jury could find other than in the moving party's favor. Id. at 331 (Brennan, J., dissenting).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. Anderson, 477 U.S. at 250. The nonmoving party does this by citing to specific parts of the materials in the record or by showing that the materials cited by the moving party do not compel a judgment in the moving party's favor. Fed. R. Civ. P. 56(c). Because the court has no obligation to "scour the record in search of a genuine issue of triable fact," the nonmoving party must "identify with reasonable particularity the evidence that precludes summary judgment." Kennan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). If the nonmoving party fails to raise a genuine issue as to any material fact, the moving party is entitled to judgment as a matter of law. Anderson, 477 U.S. at 250. In determining whether there is a

genuine issue for trial, the court does not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. Id. at 249.

### B. Stay

Pursuant to Federal Rule of Civil Procedure 62(b) (formerly 62(d)[2]), "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." When a litigant complies with the rule by appealing "and post[ing] a supersedeas bond with the district court, it [is] entitled to a stay as a matter of right." See American Civil Liberties Union of Nevada v. Masto, 670 F.3d 1046, 1066 (9th Cir. 2012).

## III. DISCUSSION

Plaintiffs argue that Bank Melli's legal challenges have been resolved, that all of the requirements of TRIA have been satisfied, and that the time has come for the Court to enter judgment in their favor. See generally MSJ. Bank Melli opposes, arguing that the Court should deny summary judgment because (A) the Blocked Assets are not "assets of" Bank Melli; (B) the Blocked Assets are not validly blocked; (C) there are other arguments that Bank Melli would like the Supreme Court to address; and (D) even if the Court is inclined to grant summary judgment, the Court should stay enforcement pending appellate review. See generally Opp'n to MSJ; Reply re Stay. This Order addresses each argument in turn, finding persuasive only the argument for a stay.

### A. "Assets of" Bank Melli

Bank Melli's first argument opposing summary judgment is that TRIA requires ownership, and that Plaintiffs have not met their burden of demonstrating ownership here, because (1) there is a dispute over the ownership of the funds; and (2) Bank Melli's

---

[2] See Fed. R. Civ. P. advisory committee note to 2018 amendment ("Subdivisions (a), (b), (c), and (d) of former Rule 62 are reorganized. . . . Subdivision 62(b) carries forward in modified form the supersedeas bond provisions of former Rule 62(d).").

8

intangible right to receive payment is not a property right subject to this Court's jurisdiction. See Opp'n to MSJ at 7–11. The Court rejects both points.

### 1. Dispute over Ownership of Funds

Bank Melli argues that the Court cannot grant summary judgment for Plaintiffs because there is a genuine factual dispute about who owns the funds in the Court's Registry. See id. at 7–8. Bank Melli argues that "TRIA permits execution only against 'blocked assets of [a] terrorist party,'" and that the "evidence produced in discovery makes clear that Visa, not Bank Melli, is the owner of the funds." Id. at 7 (citing TRIA § 201(a)). It bolsters this argument by adding that Visa's repeated assertion that the funds are "due and owing" to Bank Melli "necessarily means that Bank Melli does not already own them." Id. at 8 (citing United States v. Rodrigues, 159 F.3d 439 (9th Cir. 1998), amended on denial of reh'g, 170 F.3d 881 (9th Cir. 1999); Broad. Music, Inc. v. Hirsch, 104 F.3d 1163, 1166 (9th Cir. 1997)).[3]

Bank Melli has asserted repeatedly that it owns the funds. See, e.g., Opp'n to Fees Mot. at 12 (arguing that Visa and Franklin should not be awarded legal fees from the Blocked Assets because Visa an Franklin's "legal fees . . . should be borne by them—not by Bank Melli"); Opp'n to MSJ at 19 (emphasis added) (seeking stay because if Blocked Assets "in the Court's registry are distributed to the hundreds of Judgment Creditors in this case, as a practical matter Bank Melli will never be able to recover them"); Bailey Decl. Ex. 4 (emphasis added) (Bank Melli 1/25/04 letter to Visa: "our funds for acquiring transactions made by VISA cardholders in Iran from 6/6/95 till cease of operations are $11,587,627.02 which are held with [Visa International]."). Visa, for its part, "claims no beneficial ownership in the $17,648,962.76 (and any interest thereon) in the Court's Registry." See Bailey Decl. ¶ 13.

---

[3] The Court already rejected this authority at the motion to dismiss phase, ruling that these cases "support[] the uncontroversial point that having an interest in property is not necessarily the same thing as owning property." See Order Denying MTD at 14.

9

Moreover, the Ninth Circuit held unambiguously at the motion to dismiss phase of the case that Bank Melli owns the funds. See Bennett, 825 F.3d at 963 ("The blocked assets are property of Bank Melli"; discussing Bank Melli argument "that TRIA § 201(a) . . . [does] not permit attachment of the assets here because Visa and Franklin own the blocked assets" and concluding under California and federal law that "those assets are property of Bank Melli and may be assigned to judgment creditors."). That ruling took into account Bank Melli's argument that the money is only "due and owing" and not currently in Bank Melli's possession. See id. at 963–64 (discussing California law re right to funds "that are due or will become due" and "money owed to Bank Melli").

That two Annual Reports list Visa as the "owner" of the funds does not undermine the conclusion that the Blocked Assets are Bank Melli's property. Those same reports identify the accounts as holding Bank Melli funds—explicitly in the 2010 report, and by referencing the same account name and value in the 2011 report. See Bailey Decl. Exs. 6, 7. Indeed, this Court just held, in granting discharge to Visa and Franklin, that "Bank Melli's contention that Visa is the true owner of the funds is foreclosed by the Ninth Circuit's ruling . . . and by a common sense reading of the Annual Reports." See Order re Discharge and Fees at 6. Put in terms of summary judgment, there is no genuine dispute about the ownership of the funds, because a reasonable jury could not find that they belong to Visa. See Anderson, 477 U.S. at 248.

### 2. Intangible Property Rights

Bank Melli next argues that even if it has a "contractual right to obtain payments from Visa and Franklin," which is a type of property that satisfies TRIA, "that would not mean that the blocked assets . . . are property of Bank Melli." Opp'n to MSJ at 8–9. Bank Melli asserts that this is an interpleader action relating only to the Blocked Assets—and that its "intangible property right" is beyond the jurisdiction of an interpleader. Opp'n to MSJ at 9–10 (citing, inter alia, State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 534 (1967) ("the fund itself is the target of the claimants")). It maintains that even if "an

10

1  intangible right to receive payment could be seized in some other case, that would not
2  support the relief sought here," because this is an interpleader. Id. at 9.

3  There are a few problems with this argument. As a threshold matter, the contention
4  that Bank Melli's "contractual right to obtain payments" does "not mean that the blocked
5  assets" are Bank Melli's property, see id. at 8–9, flies in the face of the Ninth Circuit
6  holding to the contrary. See Bennett, 825 F.3d at 963. Needless to say, the Judgment
7  Creditors are not trying to seize an intangible property right; they are trying to seize the
8  $17,648,962.76 in the Court's Registry. See MSJ at 7 ("The Blocked Assets are subject to
9  execution in partial satisfaction of the Judgment Creditors' judgments."). As for Visa and
10 Franklin's interpleader complaint, it does not separate out Bank Melli's "right . . . to
11 receive payment," see Opp'n to MSJ at 10, from the Blocked Assets themselves; rather, it
12 defines the Blocked Assets as "funds due and owing by contract to Bank Melli pursuant to
13 a contractual relationship with that bank," see Compl. ¶ 16. This definition did not trouble
14 the Ninth Circuit, which held that the Blocked Assets are the property of Bank Melli
15 because "Bank Melli has a contractual right to obtain payments from Visa and Franklin"
16 and "[u]nder California law, those assets are property of Bank Melli and may be assigned
17 to judgment creditors." See Bennett, 825 F.3d at 964.

18 A further problem is that the State Farm case that Bank Melli relies on (the only
19 controlling authority it cites), which held that "the fund itself is the target," was explaining
20 that the district court could not take the occasion of an interpleader to enjoin claimants
21 from litigating related suits in different forums. See State Farm, 386 U.S. at 533; see also
22 id. at 535 (interpleader "cannot be used to solve all the vexing problems of multiparty
23 litigation arising out of a mass tort."). The Court cautioned that "the mere existence of
24 such a fund cannot, by use of interpleader, be employed to accomplish purposes that
25 exceed the needs of orderly contest with respect to the fund." Id. at 534. Here, of course,
26 the only thing taking place is a contest with respect to the fund. The Bennett Judgment
27 Creditors filed a complaint in this Court seeking a turnover of the Blocked Assets, held in
28 this district by Visa and Franklin for the benefit of Iran, see Bennett Compl. (dkt. 1); Visa

11

1 and Franklin brought this interpleader action "to obtain a determination as to which [of the
2 groups of judgment creditors], if any, has priority with respect to [the Blocked Assets] to
3 satisfy their judgments or their claims," Compl. ¶ 4; and the Greenbaum Judgment
4 Creditors, Acosta Judgment Creditors, and Heiser Judgment Creditors all filed answers
5 asserting their own entitlement to the Blocked Assets, see Answers (dkts. 40, 41, 91). As
6 Plaintiffs point out, Bank Melli's authority does not stand for the proposition "that a
7 district court presiding over an interpleader proceeding lacks authority to decide whether
8 particular claimants to a fund are entitled to those funds . . . where they have voluntarily
9 decided to litigate their rights as part of that proceeding." See Reply re MSJ at 5–6. The
10 Court therefore rejects Bank Melli's argument that there is no interpleader jurisdiction.

11 Bank Melli also argues that its "intangible right to receive payment" is beyond the
12 Court's territorial jurisdiction, because that right is located outside of the United States.
13 Opp'n to MSJ at 10–11 (quoting Rubin v. Islamic Republic of Iran, 830 F.3d 470, 475 (7th
14 Cir. 2016) ("property subject to execution 'must be within the territorial jurisdiction of the
15 district court.'"). Relying on two Fifth Circuit cases, Bank Melli contends that where there
16 is "'an overriding national concern,' federal law may require that the situs 'be in still a
17 different place.'" Id. at 11 (citing Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.,
18 392 F.2d 706, 714–15 (5th Cir. 1968); Callejo v. Bancomer, S.A., 764 F.2d 1101, 1122
19 (5th Cir. 1985)). Bank Melli contends that, like the act of state doctrine at issue in
20 Tabacalera and Callejo, sovereign immunity implicates an overriding national concern, and
21 so the Court should find that the situs of the debt is Iran. Id.

22 A Ninth Circuit case forecloses Bank Melli's territorial jurisdiction argument. In
23 Peterson v. Islamic Republic of Iran, 627 F.3d 1117, 1130 (9th Cir. 2010), a case arising
24 under FSIA, the Ninth Circuit addressed the question of whether "Iran's rights to payment
25 from [a French debtor] constitute 'property in the United States.'" The court explained
26 that "[e]nforcement proceedings in federal district court are governed by the law of the
27 state in which the court sits" unless there is an applicable federal law. Id. The court then
28 explained that California law holds that "the location of a right to payment . . . is the

12

location of the debtor," and that therefore a right to payment is "assignable only if [the debtor resides] in the United States." Id. at 1131. Because the debtor in that case was a French corporation, "the debt obligation it owe[]d to Iran [was] located in France." Id. Here, because Visa International, Bank Melli's debtor, resides in the United States, see Bailey Decl. ¶ 3, Bank Melli's ownership interest in the Blocked Assets is located in the United States. The Court therefore rejects Bank Melli's argument that there is no territorial jurisdiction.

### B. Funds Invalidly Blocked

Bank Melli next argues that "TRIA allows execution only against 'blocked assets'" and that the funds here have not been not validly blocked. Opp'n to MSJ at 11 (quoting TRIA § 201(d)(2)). It argues that EO 13,382 is no longer in effect, and that EO 13,599 violates its due process rights. Id. at 11–15. It did not respond to Plaintiffs' assertion in their Reply brief that EO 13,244 is a separate and independent ground for the Court to find the Blocked Assets blocked under TRIA. See Reply re MSJ at 14–15. The Court holds that the funds are validly blocked.

#### 1. Executive Order 13,382 and Section 544.402

First, Plaintiffs concede that "Bank Melli's Executive Order 13,382 designation was removed," but they argue that it still has effect in this case, because of OFAC regulation 31 C.F.R. § 544.402. See MSJ at 12. Section 544.402 provides:

> Unless otherwise specifically provided, any . . . revocation of any provision in or appendix to this part or chapter or of any order, regulation, ruling, instruction, or license issued by or under the direction of the Director of the Office of Foreign Assets Control does not affect any act done or omitted, or any civil or criminal suit or proceeding commenced or pending prior to such . . . revocation.

31 C.F.R. § 544.402 (emphasis added). Plaintiffs' interpretation of section 544.402 is that the revocation of an order does not affect a pending civil suit, like this one. See MSJ at 12. Bank Melli's interpretation of the same section is that it applies "only to revocation of orders by OFAC." See Opp'n to MSJ at 14. It argues that EO 13,382 was not revoked by

13

OFAC, but as a result of the Joint Comprehensive Plan of Action ("JCPOA"). Id. (citing JCPOA annex II, § 4.8.1 & attach. 3).

The section is not altogether clear, but it does not matter. While the JCPOA was the means by which the United States "commit[ted] to cease the application of, and to seek such legislative action as may be appropriate to terminate, or modify to effectuate the termination of, all nuclear-related sanctions," such as Bank Melli's 13,382 designation, see JCPOA annex II, §§ 4, 4.8.2 & attach. 3, available at https://www.state.gov/documents/organization/245320.pdf, it was OFAC that effectuated the revocation, see Changes to Sanctions Lists Administered by the Office of Foreign Assets Control on Implementation Day Under the Joint Comprehensive Plan of Action, 81 Fed. Reg. 13,562, 13,562 (Mar. 14, 2016) ("On January 16, 2016, OFAC determined," among other things, that Bank Melli "was no longer blocked pursuant to . . . E.O. 13382."). Accordingly, even Bank Melli's interpretation of 544.402 has been met.

Bank Melli argues, however, that section 544.402 is "ineffective as contrary to TRIA." Id. (quoting Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984) ("agency regulation has no effect when it conflicts with the 'unambiguously expressed intent of Congress.'")). It contends that TRIA states only that "blocked assets" are subject to execution, but says nothing about "formerly blocked assets." Id. No matter. If assets are blocked pursuant to Executive Order 13,382 and then remain blocked by operation of section 544.402, then they remain "blocked assets," not "formerly blocked assets." There is no conflict.

Accordingly, the Blocked Assets are blocked by EO 13,382.

### 2. Executive Order 13,599

Second, Plaintiffs contend that EO 13,599 also operates to block the funds at issue here. See MSJ at 11–12. The same day that Bank Melli's EO 13,382 designation was removed, OFAC identified Bank Melli on the EO 13,599 List as an entity whose property was blocked. See 81 Fed. Reg. at 13,562 n.1, 13,591 ("The purpose of the E.O. 13599 list

14

is to clarify that, regardless of their removal from the SDN list, persons that OFAC previously identified as meeting the definition of the terms 'Government of Iran' or 'Iranian financial institution' continue to meet those definitions and continue to be persons whose property and interests in property are blocked pursuant to Executive Order 13599. . . ."); see also 60 Fed. Reg. at 40,884 (identifying Bank Melli as a bank "determined to be owned and controlled by the Government of Iran."). Bank Melli argues that EO 13,599 is invalid, however, because it violates Bank Melli's due process rights. See Opp'n to MSJ at 12–13. It argues that EO 13,599 "left the President no discretion at all," "did not result from any OFAC determination," "was not based on any findings unique to Bank Melli," and denied Bank Melli a chance to contest its designation. Id. at 13.

Plaintiffs demonstrate that the applicable blocking provision here, blocking "property and interests in property of the Government of Iran," is actually not the blocking provision that Congress mandated. See Reply re MSJ at 10 (citing EO 13599, 77 Fed. Reg. at 6660, § 7(d); 22 U.S.C. § 8513a(c) ("The President shall . . . block and prohibit all transactions in all property and interests in property of an Iranian financial institution.")). This does away with Bank Melli's discretion argument. Moreover, it appears that various entities did make findings specific to Bank Melli. See id. at 10–11 (collecting quotations from Congress, Secretary of Treasury, President Obama). Even the language cited above reflects that Bank Melli's 13,599 designation is based on OFAC's previous determination that Bank Melli continued to meet the definition of "Government of Iran" or "Iranian financial institution." See 81 Fed. Reg. at 13,562 n.1, 13,591. Particularly illogical is Bank Melli's complaint that it was denied a chance to contest its designation: there is no dispute that Bank Melli is an instrumentality of the Government of Iran. Bank Melli admitted as much in its Answer in this case. See Mechling Ex. D (Answer) ¶ 7 ("Bank Melli admits that it is currently wholly owned by the Islamic Republic of Iran and that it is an instrumentality of the Islamic Republic of Iran within the meaning of [FSIA] § 1603(b).").

Accordingly, the Blocked Assets are blocked by EO 13,599.

### 3. Executive Order 13,224

Third, Plaintiffs also assert that the very recent EO 13,224 blocks the assets in this case. See Reply re MSJ at 14–15. This is also true. See Mechling Reply Decl. Ex. A (dkt. 184-2) at 2 ("Bank Melli is being designated pursuant to E.O. 13224 for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, the IRGC-QF, which was previously designated pursuant to E.O. 13224 on October 25, 2007."); 66 F.R. 49079 (blocking "all property and interests in property of the following persons. . ." in light of "grave acts of terrorism . . . constitut[ing] an unusual and extraordinary threat"). EO 13,224 is therefore a third independent basis for finding that the Blocked Assets are validly blocked.

### C. Other Reasons

Bank Melli next argues that there are numerous arguments it could make for why the Court should deny summary judgment, but that the Ninth Circuit has already rejected those arguments. See Opp'n to MSJ at 15–17. "Bank Melli acknowledges that this Court is bound by the Ninth Circuit's decision." Id. at 15. It lists the arguments nonetheless to preserve them for Supreme Court review. Id. at 16. Accordingly, this Court does not reach Bank Melli's "Other Reasons."

Because Plaintiffs have satisfied the requirements of TRIA, and because Bank Melli's arguments are unpersuasive, the Court GRANTS summary judgment for Plaintiffs.

### D. Stay of Enforcement

Lastly, Bank Melli asks the Court to stay any enforcement or execution until after appellate and Supreme Court review. See Mot. to Stay at 17–20. Bank Melli argues that it is entitled to a stay as a matter of right, and, in the alternative, that the Court should grant a discretionary stay. Id.

The Court does not grant a discretionary stay, nor would it. But Bank Melli is entitled to a stay as a matter of right. Rule 62(b) states that "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes

16

effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." When a litigant complies with that rule by appealing "and post[ing] a supersedeas bond with the district court, it [is] entitled to a stay as a matter of right." See Masto, 670 F.3d at 1066; see also Matter of Combined Metals Reduction Co., 557 F.2d 179, 193 (9th Cir. 1977) ("[s]ince no bond was posted, the grant or denial of the stays was a matter strictly within the judge's discretion.").

Bank Melli argues that "the funds already deposited in the Court's registry satisfy [the Rule's] bond requirement." Mot. to Stay at 17 (citing Rachel v. Banana Republic, Inc., 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) ("purpose of a supersedeas bond is to secure the appellees from a loss resulting from the stay of execution")). Plaintiffs do not really disagree. See Opp'n to Mot. to Stay at 16 (conceding that "ordinarily, courts waive the posting of a supersedeas bond where the funds at issue in a litigation are deposited with the Court's Registry."). Indeed, Rule 62(b) makes explicit that something like a bond— a "bond or other security"—will do. See Fed. R. Civ. P. 62(b). Plaintiffs argue, however, that ordinarily the party requesting the stay claims to own the funds deposited with the court, and that, "[b]ecause Bank Melli refuses to acknowledge any ownership interest in or right to the Blocked Assets . . . the Court should deny Bank Melli's motion for a stay." Opp'n to Mot. to Stay at 16.

But the Rule does not actually require that the party seeking a stay be, or claim to be, the "owner" of the contested funds. See Fed. R. Civ. P. 62(b). What is important is that the funds deposited with the Court be sufficient to protect Plaintiffs from loss while the execution is stayed. See Rachel, 831 F.2d at 1505 n.1. The Blocked Assets in the Registry will do so, to the same extent that a supersedeas bond would.[4] Yes, there remains the possibility, however remote, that some future operation of law will retroactively undo all three of the Executive Orders that the Court today holds are blocking the funds. See 31

---

[4] At the motion hearing, the Court raised the question of Plaintiffs' fees on appeal. However, in the absence of an applicable fee-shifting statute, Bank Melli need not deposit additional funds to cover such fees.

17

C.F.R. § 544.402. But it strikes the Court that if that indeed takes place, then Plaintiffs would not be entitled to the funds. The Court is sympathetic to Plaintiffs' argument that they are presently entitled to the funds and that such entitlement should not be jeopardized through delay, but the Court cannot short-circuit the appellate process or the requirements of civil procedure. Because Rule 62(b) is met, see <u>Masto</u>, 670 F.3d at 1066, the Court GRANTS the motion to stay execution until after appellate and Supreme Court review.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion for Summary Judgment and GRANTS the Motion to Stay.

**IT IS SO ORDERED.**

Dated: December 19, 2018

_____
CHARLES R. BREYER
United States District Judge